Fvans, J.
delivered the opinion of the Court.
The facts of this case, as they appear from the hill, answers, and exhibits, are as follows. On the 2d January, 1812, George Craig made his last will, containing, amongst other things, the following clauses : “ I bequeath my lands to he divided equally amongst my-loving sons, Alexander, James, John, and George Craig.” “I bequeath to my loving wife, Mary, ten bushels of wheat, and one hundred bushels of corn, yearly, two 'cows, and one horse, having full privilege of the house, and water and firewood, as long as she lives my widow.” The residue of his property he directed to he sold, and the proceeds to be given to his daughters; except some articles for the support of his family for the -year, and a negro boy named Harry given to his son Alexander. How much personal estate there was, or what became of it, does not appear.
Immediately after the death of the testator, George Craig moved oh to the plantation, where his father died, and has remained there ever since, cultivating the plantation, and residing in the house with his mother. Some two or three years prior to the 28th July, 1816, James Craig, one of the testator’s sons, enlisted in the army of the United States. On that day he wrote a letter, directed to his mother, and his brother George, wherein among other things he says, “ Mother, I would wish you to live upon the land that my father left me. Sell it, and make use of it to the best advantage, to .support yourself.” Since the date of this letter, James Craig has never- been heard from. John Craig removed to Tenessee, and was supposed to be dead, leaving a wife and children, prior to 1818.
At the March term of the Court of Common Pleas for Chester *104 District, in the year 1818, a petition was filed in the name of Alexander Craig' and others, against George Craig, who was tenant in possession, praying for a partition of the lands, according to the will of George Craig, the testator. The commissioners appointed to divide, subsequently made a return, wherein they stated that the land was incapable of division into four parts, but might be conveniently divided into two parts. One of these parts they valued at $1,860, and the other at $1,452. It seems that Alexander and George took possession of the part valued at $1,860, and sold it to David Boyd. The other tract was left for John’s heirs, and James. This was the tract on which the testator lived, and whereon was situated the house, the privilege of which was given to the widow, Mary Craig, during widowhood. Since the death of testator, the old house has rotted down, and George Craig has built another on the land, at a cost of $155, in which he and his mother have continued to reside.
On the 26th April, 1826, the complainants, who are the widow and children of James Craig, under the presumption of his death, ten years having elapsed since he was last heard from, filed the bill in this case, praying for partition of the land according to the will of the testator, George Craig the elder. In this bill, George, Alexander and Mary Craig are made defendants, and it is prayed that “ the widow and children of John Craig may, by notice from the Court, be ordered to appear and answer.” The case came on to he heard at June term, 1827, before De Saussure, Chancellor, who ordered that the partition made under the order of the Court of Commou Pleas in 1818, should be confirmed, and that the title of David Boyd to the tract bought by him from Alexander and George Craig, should be confirmed. He also decreed James Craig’s part of the land to the mother during her life, under the allegation that he had given it to her by his letter dated 28th July, 1816; and after her death'the land was ordered to he sold, the proceeds to remain in the hands of the Commissioner: and the decree directs an account of the rents and profits to he taken between George Craig and the heirs of John Craig. Under this last order, various references have been had, and reports have been made, exceptions filed, and decrees made on those exceptions; hut under the views taken of the case by this Court, all the proceedings subsequent to *105 the decretal order of June, 1827, will be unnecessary to be considered, as they have grown out of a decree which must be reversed.
The proceedings to divide the lands, in the Court of Commou Pleas, were altogether irregular, but as the parties before this Court have acquiesced, so much of the decree of June, 1827, as confirms that partition, and quiets the title of David Boyd, will not be disturbed by this Court.
The letter written by James Craig, to his mother and brother George, on the 28th July, 1816, from which all that relates to this subject is extracted in the foregoing statement, is certainly no legal conveyance. It is entirely voluntary, and not such a gift as will be enforced in Equity. George Craig, who has been in possession of the land ever since the death of his father, must therefore account with the complainants for one half of the rents and profits of the land; but not including the house, forthat belonged to the mother. The letter of 28th July, 1816, however, although no legal or equitable title, may be fairly considered an authority to her to use the land, and to receive the rents and profits from his brother George, who was in pos^ session. This authority would continue until his death, whenhis estate was cast by descent upon the complainants. Not having been heard from, he would be presumed dead after seven years. In making up the account, therefore, the commissioner will charge George Craig with one half of the rent from the time he went into possession, until the 18th July, 1816, and will re-commence again on the 28th July, 1823, omitting seven years from the date of his letter. In the account no charge can be allowed for rebuilding the house. The will gave the widow the privilege of the house, but it does not follow, that the devisees of the land áre bound to participate in the repairs, or the restoration of the building. The privilege of occupancy is alone given to her.
The will gives to the widow a yearly allowance of ten bushels of wheat and one hundred bushels of corn. I see nothing in the will charging this specially on the land: but all the parties to the bill seem so to consider it, and this Court is not disposed to interfere with their construction of their rights. The commissioner must therefore, in making up the accounts, charge the complainants with a fourth of the value of the corn and wheat: and George Craig *106 having supported his mother, will be entitled to this credit; but the c]iarge must fog omitted- during the seven years for which he has not been charged the rent.
The decretal order of June, 1827, orders an account to be tafeen of the rents and profits of the land between George Craig and the heirs of John Craig. An order that defendants should account among themselves is- unusual, and ought not to be made except when it becomes necessary to a final settlement, and where at least one of the parties interested request it. In this case I see no evidence that John Craig’s heirs were ever made jrarties. The bill says he removed to the West, and there died, leaving a widow and some children; but how many, or where they resided, is unknown, and the bill concludes with a prayer that they may be made parties by notice. But they are unrepresented, and their names are not even known; and as the account is objected to by the co-defendant, so much of the decree as orders an account between George Craig and the heirs of John Craig must be reversed.
In the partition of the land made under the order of the Court of Common Pleas, the tract which was taken by Alexander and George Craig was valued at $408, more than the tract left for Jam es and John. The defendants, Alexander and George, must therefore pay the complainants one hundred and two dollars, with interest from 15th September, 1818, when the partition was -made. But the complainants contend that they have a lien upon the land to secure the payment of this difference. This may be so ; but the land now belongs to David Boyd, who is no party to this bill, and no decree can be made affecting his interests. If the complainants think proper, they can amend their bill in.this particular, and leave to do so is granted to them.
It is ordered and decreed, that so much of the various orders and decrees heretofore made in this case, as are inconsistent with the principles laid down in this decree, be reversed. And it is further ordered and decreed, that George Craig do account with the complainants for one half the rents and profits of the land, according to the principles herein contained, and that the commissioner do sell the tract of land whereon George Craig and Mary Craig reside, on the first Monday in January next, or at some convenient time after-wards, on a credit of one and two years, except so much cash as *107 will pay tbc costs of this suit: but this sale must be made subject to the‘rights of Mary Craig to the privilege of the house, water, and fire-wood, under the will of George Craig her husband. One half of the sales to be paid to the complainants, and the other half to be held by the commissioner, for the heirs of John Craig.
Mills, for appellants.
Eaves, contra.

Decree reformed.